NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 25-1182

---

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

SIERRA CLUB et al.,
*Petitioners*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY et al.,
*Respondents*.

---

Petition for Review of Action of the U.S. Environmental Protection Agency

---

# PAGE PROOF BRIEF FOR RESPONDENTS

---


ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*
CAMERON HINOJOS
*Attorney*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7611
Washington, D.C. 20044
(202) 305-5884
cameron.hinojos@usdoj.gov

Of Counsel:
AMY HUANG BRANNING
U.S. Environmental Protection Agency
Office of General Counsel

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A. Parties and Amici

All parties, intervenors, and amici appearing in this court are listed in the Brief for Petitioners.

### B. Rulings Under Review

References to the rulings at issue appear in the Brief for Petitioners.

### C. Related Cases

There are no related cases within the meaning of Circuit Rule 28(a)(1)(C).

/s/ *Cameron Hinojos*
Cameron Hinojos

Counsel for Respondents

**TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..... i

TABLE OF AUTHORITIES ..... v

GLOSSARY ..... x

INTRODUCTION ..... 1

STATEMENT OF JURISDICTION ..... 2

STATEMENT OF THE ISSUES ..... 2

PERTINENT STATUTES AND REGULATIONS ..... 3

STATEMENT OF THE CASE ..... 3

A. The Clean Air Act includes requirements for setting emission standards for solid waste incinerators. ..... 3

B. EPA promulgates performance standards for categories of solid waste incinerators. ..... 6

SUMMARY OF ARGUMENT ..... 15

STANDARD OF REVIEW ..... 19

ARGUMENT ..... 20

I. The Clean Air Act does not require EPA to regulate *all* categories of solid waste incinerators. ..... 20

A. The text and structure of Section 7429(a)(1)(E), and the Clean Air Act generally, are best read to grant EPA discretion to define other categories of solid waste incinerators for regulation. ..... 21

B. Petitioners' reliance on precedent that deals with other provisions of Section 7429 is inapposite. ..... 25

C. The Clean Air Act does not require EPA to set standards for all solid waste incinerators during its periodic review of existing standards. ....... 28

II. The 2025 rule was well reasoned and should be upheld. ....... 30

A. The Court should uphold the 2025 rule's treatment of very small municipal waste incinerators....... 30

1. EPA reasonably set standards for very small municipal waste incinerators under Section 7429(a)(1)(E), which should be upheld. ....... 30

2. EPA's decision to regulate under Section 7429(a)(1)(E) has no legal or practical effect because Section 7429 authorizes EPA to set emission standard floors based on subcategories of sources. ....... 32

B. EPA reasonably declined to regulate institutional incinerators that burn materials for energy recovery. ....... 35

C. Petitioners' remaining challenges are barred, but in any event those challenges fail. ....... 37

1. Petitioners have failed to exhaust administrative remedies....... 37

2. EPA rationally explained its decisions in defining other categories. ....... 40

3. EPA reasonably declined to remove the temporary-use exclusion....... 44

4. EPA reasonably excluded "rudimentary combustion devices" from "other categories" of solid waste incinerators. ....... 48

III. Petitioners' requested remedy is inappropriate....... 49

CONCLUSION ....... 51

CERTIFICATE OF COMPLIANCE....................................................................52

## TABLE OF AUTHORITIES*

### Cases

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
988 F.2d 146 (D.C. Cir. 1993)....................................................................49

*Appalachian Power Co. v. EPA*,
135 F.3d 791 (D.C. Cir. 1998)....................................................................19

*Badgerow v. Walters*,
596 U.S. 1 (2022)........................................................................................25

*Balt. Gas & Elec. Co. v. NRDC*,
462 U.S. 87 (1983)......................................................................................19

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971)....................................................................................38

*Collins v. Yellen*,
594 U.S. 220 (2021)....................................................................................25

**Davis Cnty. Solid Waste Mgmt. v. EPA*,
101 F.3d 1395 (D.C. Cir. 1996)...................................................23, 24, 27, 34

**Heating Air Conditioning & Refrigeration Distribs. Int'l. v. EPA*,
71 F.4th 59 (D.C. Cir. 2023) .......................................................................18

*Heating Air v. EPA*,
71 F.4th 59 (D.C. Cir. 2023) .......................................................................38

*La. Env't Action Network v. EPA*,
955 F.3d 1088 (D.C. Cir. 2020)..................................................................29

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)..............................................................................19, 20

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)......................................................................................19

---

* Authorities upon which we chiefly rely are marked with asterisks.

*Nat'l Ass'n of Clean Water Agencies v. EPA*,
734 F.3d 1115 (2013)..........27, 28

**Nat'l Petrochemical & Refiners Ass'n v. EPA*,
287 F.3d 1130 (D.C. Cir. 2002)..........35

**Ne. Md. Waste Disposal Auth. v. EPA*,
358 F.3d 936 (D.C. Cir. 2004)..........17

**NRDC v. EPA*,
489 F.3d 1364 (D.C. Cir. 2007)..........10, 25, 26, 27, 28, 34, 36

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*,
605 U.S. 168..........19

*Sierra Club v. EPA*,
479 F.3d 875 (D.C. Cir. 2007)..........10

*Sierra Club v. EPA*,
551 F.3d 1019 (D.C. Cir. 2008)..........11, 12, 39, 47

*Sierra Club v. Wheeler,*
330 F. Supp. 3d 407 (D.D.C. 2018)..........11

*Solvay USA Inc. v. EPA*,
608 F. App'x 10 (D.C. Cir. June 3, 2016)..........46

*U.S. Sugar Corp. v. EPA*,
830 F.3d 579 (D.C. Cir. 2016)..........25, 26, 28

*Va. Uranium v. Warren*,
587 U.S. 761 (2019)..........23

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001)..........23

*Wisconsin v. EPA*,
938 F.3d 303 (D.C. Cir. 2019)..........49

**Statutes**

42 U.S.C. § 6903(27)..........46

42 U.S.C. § 7411..........5

42 U.S.C. § 7411(b)(1)(B) ....................5, 6

42 U.S.C. § 7412(c)(1) ....................24

42 U.S.C. § 7412(d)(1)–(3) ....................29

42 U.S.C. § 7412(d)(6) ....................29

42 U.S.C. § 7429 ....................4, 46, 47

42 U.S.C. § 7429(2)–(3) ....................15

42 U.S.C. § 7429(a) ....................21

42 U.S.C. § 7429(a)(1) .................... 4

42 U.S.C. § 7429(a)(1)(B)–(D) ....................4, 22

42 U.S.C. § 7429(a)(1)(B)–(E) ....................16

42 U.S.C. § 7429(a)(1)(D) ....................4, 26

*42 U.S.C. § 7429(a)(1)(E) ....................2, 4, 15, 23, 24, 25, 35, 50

42 U.S.C. § 7429(a)(2) .................... 5

*42 U.S.C. § 7429(a)(2) ....................5, 17, 33

42 U.S.C. § 7429(a)(3) ....................5, 12

*42 U.S.C. § 7429(a)(5) ....................5, 28

42 U.S.C. § 7429(g)(1) ....................26, 36, 45

42 U.S.C. § 7429(g)(5)–(6) ....................23

42 U.S.C. § 7429(g)(6) ....................46

42 U.S.C. § 7607(b)(1) .................... 2

42 U.S.C. § 7607(d)(7)(B) ....................18, 36, 38, 39

42 U.S.C. § 7607(d)(9)(A) ....................19, 49

**Code of Federal Regulations**


40 C.F.R. § 60.2885 .......... 14

40 C.F.R. § 60.2887(q)(1) .......... 9

40 C.F.R. § 60.2887(q)(2) .......... 9

40 C.F.R. § 60.2969 .......... 44, 46

40 C.F.R. § 60.2977 .......... 45

40 C.F.R. § 60.2991 .......... 14

40 C.F.R. § 60.3061 .......... 44


**Federal Register**


58 Fed. Reg. 58498 (Nov. 2, 1993) .......... 6, 31, 32, 43

62 Fed. Reg. 1868 (Jan. 14, 1997) .......... 7

65 Fed. Reg. 67357 (Nov. 9, 2000) .......... 6, 7, 44

65 Fed. Reg. 75338 (Dec. 1, 2000) .......... 6

65 Fed. Reg. 76350 (Dec. 6, 2000) .......... 31

65 Fed. Reg. 76359 (Dec. 6, 2000) .......... 31

69 Fed. Reg. 71472 (Dec. 9, 2004) .......... 9, 30, 41, 42, 43

70 Fed. Reg. 74870 (Dec. 15, 2005) .......... 7, 8, 9, 41, 42, 43, 44, 45

76 Fed. Reg. 15372 (Mar. 21, 2011) .......... 7

85 Fed. Reg. 54178 (Aug. 31, 2020) .......... 12, 14

89 Fed. Reg. 60342 (July 25, 2024) .......... 39, 48

*90 Fed. Reg. 27910 (June 30, 2025) .... 2, 12, 13, 14, 15, 29, 30, 36, 37, 40, 47, 48, 49, 50

**Legislative History**

*Clean Air Act Amendments of 1990,
101 Pub. L. 549, 104 Stat. 2399 (Nov. 15, 1990) ..........................................4, 24

**Dictionaries**

**New Oxford American Dictionary* (2d ed., 2005) ................................................46

## GLOSSARY

| | |
|---|---|
| 2025 rule | Standards of Performance for New Stationary Sources and Emission Guidelines for Existing Sources: Other Solid Waste Incineration Units Review, 90 Fed. Reg. 27910 (June 30, 2025) |
| 2005 rule | Standards of Performance for New Stationary Sources and Emission Guidelines for Existing Sources: Other Solid Waste Incineration Units, 70 Fed. Reg. 74870 (Dec. 16, 2005) |
| Other categories | Other categories of solid waste incineration units under Section 7429(a)(1)(E) of the Clean Air Act. |
| Clean Air Act Amendments | Clean Air Act Amendments of 1990, 101 Pub. L. 549, 104 Stat. 2399 (Nov. 15, 1990) |
| EPA | Environmental Protection Agency |
| MACT | Maximum Achievable Control Technology |
| MACT floors | The minimum level of required stringency for the standards of performance applicable to every source within a category or subcategory |

## INTRODUCTION

In 2025, the Environmental Protection Agency (EPA) promulgated a rule that reviewed and revised performance standards for "other categories" of solid waste incinerators in accordance with Section 7429(a)(1)(E) of the Clean Air Act. As part of its review, EPA reviewed the standards it initially promulgated for "other categories" of solid waste incinerators in a 2005 rule on which EPA sought remand, modifying some parts of the rule but leaving much of it unchanged.

Environmental organizations' challenge to the 2025 rule rests primarily on flawed statutory arguments. In essence, Petitioners assert that EPA was required to categorize and set standards for *all* solid waste incinerators when reviewing the 2005 rule, and that the 2025 rule did not go far enough in regulating "other categories." The Clean Air Act does not require such regulation. Section 7429(a) is best read to require EPA to set standards by specific dates for the enumerated categories of incinerators listed in Section 7429(a)(1)(B) through (D). And Section 7429(a)(1)(E) grants EPA discretion to define and set standards, on the Agency's own timeline, for an undefined subset of "other categories" not listed in the provision.

Petitioners do not meaningfully take issue with the actual performance standards that EPA set in the 2025 rule, instead asserting only that EPA failed to explain why it identified and set standards for some, but not all, "other categories"

of solid waste incinerators. Most of these claims are barred because Petitioners failed to raise them in comments during the 2025 rulemaking. In any event, EPA rationally articulated its choices to define certain "other categories" based on the information before it. In particular, EPA rationally exercised its discretion in defining the category of very small municipal waste incinerators as within the "other categories" of Section 7429(a)(1)(E). Because EPA may subcategorize when setting standards, there is no legal or practical difference between EPA promulgating standards for very small municipal waste incinerators within the listed small municipal waste incinerators category or within "other categories" of solid waste incinerators. The Court should uphold EPA's rule as lawful and rationally explained and deny the petition for review.

## STATEMENT OF JURISDICTION

This Court has jurisdiction under Clean Air Act section 7607(b)(1), 42 U.S.C. § 7607(b)(1). The petition for review was timely filed because the action at issue here was published on June 30, 2025, 90 Fed. Reg. 27910, JA___, and the petition for review was filed on August 29, 2005. Doc. 2132983.

## STATEMENT OF THE ISSUES

1. Whether Section 7429(a)(1)(E) of the Clean Air Act delegates EPA bounded discretion to define "other categories" of solid waste incinerators. 42 U.S.C. § 7429(a)(1)(E).

2. Whether EPA acted within the reasoned bounds of this delegation when it identified certain "other categories" of solid waste incinerators and set performance standards for those categories, including:

a. whether EPA reasonably regulated very small municipal waste incinerators as one of the "other categories" of solid waste incinerators under Section 7429(a)(1)(E), rather than as a subcategory of small municipal waste incinerators under Section 7429(a)(1)(C);

b. whether EPA reasonably declined to regulate institutional incinerators that burn materials for energy recovery; and

c. whether Petitioners' challenges to certain exemptions are properly before this Court, and if so, whether EPA reasonably declined to revise those exemptions in the 2025 rule.

## PERTINENT STATUTES AND REGULATIONS

Except for the pertinent statutes and regulations set forth in the Addendum following this brief, all other applicable statutes and regulations are contained in the Brief for Petitioners.

## STATEMENT OF THE CASE

### A. The Clean Air Act includes requirements for setting emission standards for solid waste incinerators.

Congress enacted Section 7429 as part of a major overhaul of the Clean Air Act in 1990 (Clean Air Act Amendments). *See generally*, Clean Air Act

Amendments of 1990, 101 Pub. L. 549, 104 Stat. 2399 (Nov. 15, 1990), JA___. Section 7429 directs EPA to establish performance standards for certain solid waste incinerators. 42 U.S.C. § 7429. It lists specific categories of incinerators and sets deadlines for the Agency to establish performance standards for "each category," which include emissions limitations for new units and guidelines for existing units. *See id.* § 7429(a)(1). These categories are 1) large municipal waste incinerators, 2) small municipal waste incinerators, 3) hospital, medical, and infectious waste incinerators, and 4) commercial and industrial waste incinerators. *Id.* § 7429(a)(1)(B)–(D). For commercial and industrial waste incinerators, for example, the Clean Air Act set EPA's deadline to "not later than 48 months after November 15, 1990." *Id.* § 7429(a)(1)(D).

In contrast to the enumerated categories, the final subparagraph, Section 7429(a)(1)(E), takes a different approach; it directs EPA to "publish a schedule for the promulgation of standards under section 7411 of this title and this section" that would be "applicable to other categories of solid waste incineration units." *Id.* § 7429(a)(1)(E). The statute sets a deadline for issuance of the schedule but does not address the scope of or timing for regulation of "other categories."

Section 7429 requires EPA to set standards that "reflect the maximum degree of reduction in emissions of air pollutants . . . that the Administrator, taking into consideration the cost of achieving such emission reduction, . . . determines is

achievable for new or existing units in each category." *Id.* § 7429(a)(2). These are referred to as "maximum achievable control technology" or "MACT" standards. They are "based on methods and technologies for removal or destruction of pollutants before, during, or after combustion . . . ." *Id.* § 7429(a)(3). The Act permits EPA to "distinguish among classes, types . . ., and sizes of units within a category in establishing such standards." *Id.* That is, EPA may create subcategories within each category and set different MACT standards within those subcategories. *Id.* And, "MACT floors" represent the minimum level of required stringency for the standards of performance applicable to every source within a category or subcategory (if any). *E.g.*, *id.* § 7429(a)(2) (for new sources, "[t]he degree of reduction in emissions that is deemed achievable for new units in a category shall not be less stringent than the emissions control that is achieved in practice by the best controlled similar unit, as determined by the Administrator").

Every five years after the initial promulgation of standards "applicable to a category of solid waste incineration units," Section 7429 requires EPA to review the standards and, "in accordance with this section and section 7411 of this title, revise such standards and requirements." *Id.* § 7429(a)(5) (referencing 42 U.S.C. § 7411). Section 7411, which involves the regulation of emissions from certain stationary sources, also contains a periodic review provision. *Id.* § 7411(b)(1)(B). That provision requires EPA, except in specified circumstances, to review

standards promulgated under Section 7411 every eight years and revise the standards if the EPA finds it "appropriate." *Id.*

### B. EPA promulgates performance standards for categories of solid waste incinerators.

Prior to promulgation of the 2025 rule, EPA set standards for the four statutorily enumerated solid waste incinerator categories in Section 7429(a)(1)(B)–(D). *See, e.g.*, 65 Fed. Reg. 75338 (Dec. 1, 2000) (standards for commercial and industrial solid waste incinerators) JA___. However, relevant to this matter, EPA long ago determined that very small municipal waste incinerators (those limited to incineration capacities under 35 tons per day)[2] were sufficiently distinct in technology and ownership characteristics from small municipal waste incinerators units that they should not be covered by the same rule. 58 Fed. Reg. 58498, 58499 (Nov. 2, 1993), JA___, ___. EPA expressed its intent to address very small municipal waste incinerators under its "other categories" of solid waste incinerators authority in Section 7429(a)(1)(E). *Id.* EPA also named six additional "other categories" that it planned to explore regulating, under Section 7429(a)(1)(E), "*as appropriate*." *Id.* at 58501 (emphasis added). Those potential

---

[2] EPA initially determined that very small municipal waste incinerators were incinerators with capacity less than 35 *megagrams* per day, which is about 39 *tons* per day. *See* 58 Fed. Reg. at 58499, JA___. But EPA later determined that very small municipal waste incinerators are ones with capacity of less than 35 tons per day. *See* 65 Fed. Reg. 67357, 67357–67358 (Nov. 9, 2000), JA___.

categories included, for example, agricultural waste incinerators, human and animal crematories, and contaminated soil treatment facilities. After publishing this initial list of categories under investigation for regulatory development, EPA also noted that it intended to regulate sewage sludge incinerators as a category under Section 7429(a)(1)(E) instead of under Section 7412 as it had initially planned. 62 Fed. Reg. 1868 (Jan. 14, 1997), JA___.

In 2000, EPA published a revised schedule with a deadline of November 15, 2005, for setting performance standards for other categories of solid waste incinerators (the revised schedule). 65 Fed. Reg. at 67357, JA___. EPA again noted that, given the limited information available at the time, the Agency would consider adding or deleting categories "[a]s additional information is collected." *Id.* at 67358.

**<u>The 2005 rule and subsequent reconsideration</u>**

In 2005, pursuant to the revised schedule, EPA finalized performance standards and emission guidelines for two "other categories" of solid waste incinerators (the 2005 rule). 70 Fed. Reg. 74870 (Dec. 16, 2005), JA___.[3]

---

[3] As Petitioners note, Pet'rs' Br. 17 n.2, EPA did not regulate sewage sludge incinerators as a category under Section 7429(a)(1)(E) in the 2005 rule. On March 21, 2011, EPA promulgated a rule regulating sewage sludge incinerators under Section 7429(a)(1)(E). 76 Fed. Reg. 15372 (Mar. 21, 2011), JA___. So, since 2011, there are three "other categories" of solid waste incinerators. However, that rule and any issues involving sewage sludge are not part of this petition; this brief

Specifically, the 2005 rule addressed very small municipal solid waste incinerators (those with capacity to burn less than 35 tons per day of municipal waste) and institutional waste incinerators (incinerators located at institutional facilities such as schools and churches that burn waste generated in the facilities). *Id.* at 74871, 74903.

During the 2005 rulemaking, EPA considered numerous potential categories in determining what "other categories" to define and regulate under Section 7429(a)(1)(E). EPA explained why, based on the information before it, the Agency would not define and regulate certain additional "other categories" at that time under Section 7429(a)(1)(E), including several categories that EPA had previously identified for further investigation. For example, EPA declined to move forward with categorizing and regulating agricultural waste incinerators because the Agency was unable to locate any information on such incinerators despite investigative efforts. *Id.* at 74877. EPA also declined to move forward with categorizing and regulating crematories after determining that human bodies are not "solid waste" consisting of discarded materials. *Id.* at 74881. EPA also declined to establish categories for animal crematories or pathological materials incinerators because emissions from these facilities were very low and imposing

---

will continue to only refer to the two categories created in the 2005 rule and retained in the 2025 rule.

regulation could result in increased animal "disease transmission and mortality along with corresponding economic impacts on farmers." 69 Fed. Reg. 71472, 71479 (Dec. 9, 2004), JA___, ___; 70 Fed. Reg. at 74881, JA___. EPA also declined to categorize and regulate contaminated soil treatment facilities that are already well regulated under other federal environmental laws. 69 Fed. Reg. at 71480, JA___; 70 Fed. Reg. at 74871-72, JA___–___. And EPA declined to categorize and regulate incinerators used to destroy illegal drugs and contraband because the Agency did not want to hinder or deter the use of incinerators by government agencies to completely destroy these substances to protect public health and safety. 69 Fed. Reg. at 71483, JA___; 70 Fed. Reg. at 74872, JA___.

In the 2005 rule, EPA also included a narrow exception for incinerators burning sensitive national security documents. 70 Fed. Reg. at 74880–81, JA___–___. The exception applies to any incinerator otherwise subject to the regulations when used solely in a military field exercise to destroy national security materials integral to the field exercise. 40 C.F.R. § 60.2887(q)(1). For incinerators used to solely incinerate national security materials, the operator may apply to the EPA for an exception if it meets certain criteria. *Id.* § 60.2887(q)(2).

Petitioners sought review of the 2005 rule. *Sierra Club v. EPA*, No. 06-1066 (D.C. Cir. 2006), Doc. 949831-1. That case was placed in abeyance while the parties pursued alternatives to litigation. *See, id.,* Docs. 1086290 (motion to place

case in abeyance), 1087021 (order granting motion). The parties continued to discuss potential options during the abeyance. *See, e.g., id.,* Doc. 1579996 (status report giving update on the parties' discussions).

Meanwhile, this Court decided three cases that EPA identified as relevant to this context. *Sierra Club v. EPA (Sierra Club I)*, addressed EPA's methodology for setting emission floors for hazardous air pollutants under Section 7412. 479 F.3d 875, 880 (D.C. Cir. 2007) (holding that EPA was required to set floors based on emission levels actually achieved by the best performing units under Section 7412(d)(3) and that EPA could not set floors based on what is achievable by all sources). *NRDC v. EPA* involved a challenge to EPA's definition of the term "commercial or industrial waste" under Section 7429(a)(1)(D). 489 F.3d 1364, 1257 (D.C. Cir. 2007). There, EPA had defined "commercial or industrial waste" to exclude any commercial or industrial waste incinerator from Section 7429 performance standards for any incinerator that permits thermal recovery or recovers thermal energy. *Id.* The Court held that the plain language of Section 7429(a)(1)(D), when read with the definition of "solid waste incineration unit" in Section 7429(g)(1), required EPA to regulate all solid waste incinerators that combust any commercial or industrial solid waste material, regardless of whether the incinerators are used for thermal recovery. *Id.* at 1257–58. And *Sierra Club v. EPA (Sierra Club II)* addressed whether emission standards for sources of

hazardous air pollutants must be continuous. 551 F.3d 1019, 1027 (D.C. Cir. 2008). There, EPA exempted certain major sources from complying with Section 7412 emission standards during periods of startups, shutdowns, and malfunctions. *Id.* The Court held that because Section 7412 required continuous emissions standards, the exemption was contrary to the statute. *Id.* at 1027-28.

In 2016, EPA moved for voluntary remand of the 2005 rule without vacatur, which this Court granted. *See id.*, Docs. 1596183, 1609762. EPA explained that remand was appropriate "to allow EPA to consider what potential revisions, if any, to the Final Rule may be appropriate in light of relevant decisions," including the three cases referenced above. *Id.*, Doc. 1596183.

**<u>The 2025 rule and the present petition for review.</u>**

In 2016, Petitioners in this case filed a suit in the U.S. District Court for the District of Columbia alleging that EPA failed to conduct a five-year review of the performance standards established in the 2005 rule for "other categories" of solid waste incinerators under Section 7429(a)(5). *Sierra Club v. Wheeler*, No. 16-2461 (D.D.C.), Doc. 1. The district court ordered EPA to complete its review of the standards for other categories set in the 2005 rule by June 30, 2025. *Sierra Club v. Wheeler,* 330 F. Supp. 3d 407, 421–23 (D.D.C. 2018); *see also Sierra Club v. Wheeler*, No. 16-2461, Nov. 7, 2023 Minute Order (amending order).

EPA completed its review of the 2005 rule in a final rule published on June 30, 2025. 90 Fed. Reg. 27910 (June 30, 2025), JA___. As part of the Section 7429(a)(5) review, EPA focused on control measure performance, including any recent developments in practices, processes, and control technologies, to ensure that the standards are ‘‘based on methods and technologies for removal or destruction of pollutants before, during or after combustion . . . .” 85 Fed. Reg. 54178, 54182 (Aug. 31, 2020) (quoting 42 U.S.C. § 7429(a)(3)), JA___, ___; 90 Fed. Reg. at 27,913–14, JA___, ___. After reviewing available performance data for operating incinerators and searching for any new technologies or process improvements in incinerators subject to the 2005 rule, EPA did not find any new developments that warranted revisions. 85 Fed. Reg. at 54183, JA___; 90 Fed. Reg. at 27914, JA___. As such, EPA made no revisions based on the Section 7429(a)(5) review. 90 Fed. Reg. at 27912, JA___.

In addition, in the 2025 rule, EPA considered the three D.C. Circuit decisions referenced above. *Id.* at 27917. In response to *Sierra Club II*, 551 F.3d at 1019, which held, on review of regulations under a different statutory provision, that standards must apply continuously, EPA elected to remove a provision exempting performance standards from applying during startup, shutdown, and malfunction events. 90 Fed. Reg. at 27917–18, JA___–___. EPA also considered

the other two D.C. Circuit decisions, *Sierra Club I and NRDC*, and determined that neither decision required further revisions to the 2005 rule. *See id.* at 27927–28.

During the public comment period for the 2025 rule, EPA received comments citing the *NRDC* decision to support arguments that the Agency must set standards for *all* other solid waste incinerators. *Id.* at 27926. In response, the Agency disagreed, noting that this Court's decision interpreted the terms of Section 7429(a)(1)(D) and associated definitions to require regulation of all *commercial and industrial incinerators* and did "not address whether the EPA is required to establish emission standards for *all* 'other categories' of solid waste incineration units." *Id.* at 27927 (emphasis added). Accordingly, the 2025 rule did not revisit or alter EPA's decisions and rationales in the 2005 rule for not categorizing and regulating certain additional other solid waste incinerators. *Id.*

The 2025 rule also included other changes based on information EPA received after issuing the 2005 rule. For example, EPA decided to regulate small remote incinerators as very small municipal waste incinerators under Section 7429(a)(1)(E) instead of continuing to regulate them as commercial and industrial waste incinerators under Section 7429(a)(1)(D). *Id.* at 27914. Based on new information obtained after promulgation of the 2005 rule, EPA explained that these small remote incinerators were not commercial and industrial waste incinerators,

despite being located on commercial or industrial sites, because they burn municipal waste. *Id.*

In addition, the 2025 rule established subcategories for the two existing "other categories"—institutional waste incinerators and very small municipal waste incinerators—based on unit capacity and established new standards for those that incinerate less than 10 tons per day. 90 Fed. Reg. at 27914, JA___. EPA explained that these smaller units' design and mode of operation differ from the larger capacity units in these categories. 85 Fed. Reg. at 54184, JA___; 90 Fed. Reg. at 27914, JA___.

The 2025 rule also included a new definition of "rudimentary combustion devices," at 40 C.F.R. §§ 60.2885 and 60.2991. 90 Fed. Reg. at 27914, JA___. These devices, which are generally located in remote areas, also have capacities below 10 tons per day, but "lack key elements typical of incineration units," *id.* at 27928, such as "stacks or other incinerator design elements, such as waste feed or flue gas systems, heat recovery, and bottom ash systems." *Id.* at 27914 (referring to some of these devices as "burn boxes"). EPA determined that a new definition for rudimentary combustion devices was appropriate based on numerous comments submitted by rural Alaskan communities that use such devices. *Id.*

Due to the vast differences in characteristics between "rudimentary combustion devices" and other units, EPA concluded that these "rudimentary

combustion devices" are neither very small municipal waste incinerators nor institutional waste incinerators. *Id.* In addition, numerous commenters stated that the associated costs of compliance with any standards would result in abandoning these devices in favor of more environmentally harmful disposal methods, such as "open burning, barrel burning, or loose filling waste which could also attract wildlife that may present immediate health and safety risks." *Id.* Therefore, the 2025 rule discontinued application of the standards for "other categories" of solid waste incinerators to rudimentary combustion devices. *Id.* However, due to the significant limitations and constraints in addressing these devices, including their remoteness, EPA did not promulgate new standards for these devices in the 2025 rule. *Id.* at 27913.

## SUMMARY OF ARGUMENT

Based on the plain language of Section 7429(a)(1)(E) and the structure of Section 7429(a)(1) more broadly, the statute is best read as delegating to EPA the discretionary authority to identify "other categories" of solid waste incinerators and establish appropriate standards on its own reasonable timeline. 42 U.S.C. § 7429(a)(1)(E); (2)–(3). After setting out specifically enumerated categories, Section 7429(a)(1)(E) authorizes EPA to set a *schedule* to promulgate standards for "other categories" of solid waste incinerators. *Id.* § 7429(a)(1)(E). Whereas EPA must regulate the specific categories listed in subparagraphs (B) through (D) of

Section 7429(a)(1), in subparagraph (E), Congress left EPA discretion to identify and regulate "other categories" not listed or defined in the statute. Unlike the other subparagraphs of Section 7429(a)(1) that enumerate specific categories of solid waste incinerators that burn municipal waste, medical waste, and commercial and industrial waste and require EPA to issue standards by particular dates, Section 7429(a)(1)(E) neither specifies categories EPA must regulate nor requires EPA to regulate any particular other categories on any particular timeline. *See id.* § 7429(a)(1)(B)–(E).

In the 2025 rule, EPA acted reasonably and within its discretionary authority to set the standards it did while declining to revisit the majority of the 2005 rule. That is, EPA reasonably explained its rationale for identifying subcategories within, and setting revised standards for, the two specific "other categories of solid waste incineration units" under Section 7429(a)(1)(E), specifically, institutional waste incinerators and very small municipal waste incinerators. Petitioners' primary argument is statutory—that EPA must, when conducting a review of existing standards for "a category," regulate *all* solid waste incineration units under Section 7429. *E.g.*, Pet'rs' Br. 26. But the statute plainly delegates authority to EPA to determine which "other categories" of solid waste incinerators it should list and regulate under Section 7429(a)(1)(E), and there is no statutory basis for

compelling regulation of additional "other categories" at this juncture. Nor does the precedent upon which Petitioners rely hold otherwise.

Petitioners also challenge the reasonableness of the 2025 rule's performance standards. For example, Petitioners assert that EPA should have regulated very small municipal waste incinerators under Section 7429(a)(1)(C), despite knowing for years that EPA intended to regulate this category under Section 7429(a)(1)(E). Of note, Petitioners do not meaningfully challenge the substance of the standards set and offer no evidence that EPA's performance standards would have changed if very small municipal waste incinerators were regulated under Section 7429(a)(1)(C). The Clean Air Act authorizes EPA to subcategorize within each category of solid waste incinerators when setting standards. 42 U.S.C. § 7429(a)(2); *see also Ne. Md. Waste Disposal Auth. v. EPA*, 358 F.3d 936, 943 (D.C. Cir. 2004) (holding that EPA can set MACT floors and standards based on the subcategory as opposed to the category as a whole). As such, it makes no legal or practical difference whether EPA regulates very small municipal waste incinerators as one of the "other categories" or under the small municipal waste incinerators category; the same performance standards would apply.

Petitioners further challenge EPA's decision to continue exempting institutional incinerators that recover thermal energy, but EPA reasonably exercised its statutory discretion to define "other categories" and elected not to

regulate these incinerators because their primary function is to recover energy for useful purposes and not burning waste.

Lastly, Petitioners challenge EPA's decision not to regulate certain incinerators as arbitrary and capricious, alleging that EPA failed to explain why it did not set standards for certain incinerators. Pet'rs' Br. 42. Petitioners are barred from raising these "failure to explain" claims because no one raised them during the public comment period for the 2025 rule. 42 U.S.C. § 7607(d)(7)(B) ("Only an objection to a rule or procedure which was raised with reasonable specificity during the period for public comment (including any public hearing) may be raised during judicial review."); *Heating Air Conditioning & Refrigeration Distribs. Int'l. v. EPA*, 71 F.4th 59, 65 (D.C. Cir. 2023) (citing 42 U.S.C. § 7607(d)(7)(B)) ("a litigant may raise in court only an objection to a rule or procedure which was raised with reasonable specificity during the period for public comment") (quotations omitted).

In any event, Petitioners' claims mainly pertain to categorization decisions in the 2005 rule that the 2025 rule did not revisit or alter. Pet'rs' Br. 42. And even if EPA had reopened these issues, EPA reasonably explained its decisions regarding those exclusions in the record for the 2005 rule. As for Petitioners' claim that EPA failed to explain its change in position to regulate certain incinerators, *id.*

at 43, EPA did not change its position and, therefore, there was no change to explain in the 2025 rule.

## STANDARD OF REVIEW

Under the Clean Air Act, a court may reverse a final action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 7607(d)(9)(A). This standard is narrow, and a court cannot substitute its policy judgment for EPA's. *Appalachian Power Co. v. EPA*, 135 F.3d 791, 802 (D.C. Cir. 1998). If EPA considered the relevant factors and articulated a rational connection between the facts found and the choices made, its decisions must be upheld. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). And when the "agency makes those kinds of speculative assessments or predictive or scientific judgments, and decides what qualifies as significant or feasible or the like, a reviewing court must be at its 'most deferential.'" *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 182 (2025) (quoting *Balt. Gas & Elec. Co. v. NRDC*, 462 U.S. 87, 103 (1983)).

When interpreting statutory terms, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). To resolve the meaning of disputed statutory language, a court shall adopt the interpretation that

the court, "after applying all relevant interpretive tools, concludes is best." *Id.* at 400. "Careful attention to the judgment of the Executive Branch may help inform that inquiry." *Id.* at 412–413. And "the statute's meaning may well be that the agency is authorized to exercise a degree of discretion." *Id.* at 394. That is, some statutes "empower an agency to prescribe rules to 'fill up the details' of a statutory scheme . . . ." *Id.* at 395 (citations omitted).

## ARGUMENT

### I. The Clean Air Act does not require EPA to regulate *all* categories of solid waste incinerators.

The best reading of Section 7429(a)(1)(E) is that Congress delegated to EPA limited discretionary authority to define "other categories" of solid waste incinerators that should be regulated and to then set appropriate standards for those categories on the Agency's own timeline. *See Loper Bright*, 603 U.S. at 395 ("When the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is . . . fixing the boundaries of the delegated authority . . . and ensuring the agency has engaged in reasoned decisionmaking within those boundaries.") (cleaned up).

From the plain language and structure of Section 7429, it is apparent that Congress believed particular categories of incinerators were giving rise to the most significant air quality concerns. Accordingly, Congress directed EPA to set performance standards by dates certain for the incinerators it considered

problematic. But with limited understanding on this subject, Congress granted EPA, the Agency with expertise on the subject of air quality, bounded authority to define additional "other categories" that should be subject to performance standards. Thus, Section 7429's best reading grants EPA discretion to define and sets standards for "other categories" of solid waste incinerators that the statute itself does not define. There is no support, statutory or otherwise, for Petitioners' argument that EPA must both categorize and regulate *all* other solid waste incinerators in reviewing existing standards.

### A. The text and structure of Section 7429(a)(1)(E), and the Clean Air Act generally, are best read to grant EPA discretion to define other categories of solid waste incinerators for regulation.

Section 7429(a)(1)(A) generally directs EPA to establish performance standards for "each category of solid waste incineration units," and Sections 7429(a)(1)(B) through (E) set out the categories for and means by which EPA is to implement this obligation. Under the statute's plain terms, EPA has an obligation to set standards for "each category" of solid waste incinerators set out in the provision by particular dates. 42 U.S.C. § 7429(a). But the statute leaves it to EPA to define, in the first instance, any "other categories" of incinerators for regulation in the schedule required by Section 7429(E). Once EPA identifies and defines a category as an "other category," it must regulate that category under Section 7429(a)(1)(A)'s "each category" language. But until EPA defines additional "other

categories," the statute imposes no such obligation, and Petitioners err in attempting to write their preferred list of categories into statutory language that left that decision up to EPA.

The basic structure of Section 7429 supports EPA's discretion to define and regulate "other categories." This is especially apparent when Section 7429(a)(1)(E) is compared to subparagraphs (B) through (D), which enumerate specific categories to be regulated and impose deadlines for promulgating standards. These subparagraphs list four categories EPA must regulate: 1) large municipal solid waste incinerators; 2) small municipal solid waste incinerators; 3) hospital, medical, and infectious waste incinerators; and 4) commercial and industrial solid waste incinerators.[4] 42 U.S.C. § 7429(a)(1)(B)–(D). They also specify that EPA must set standards by specific dates for each enumerated category. *E.g.*, *id.* § 7429(a)(1)(D) ("Standards . . . applicable to solid waste incineration units combusting commercial or industrial waste shall be proposed not later than 36 months after November 15, 1990 . . . ."). By contrast, Section 7429(a)(1)(E) requires EPA to "publish a schedule for the promulgation of standards" covering

---

[4] The statute writes these as "solid waste incineration units with capacity greater than 250 tons per day combusting municipal waste," "solid waste incineration units with capacity equal to or less than 250 tons per day combusting municipal waste," "solid waste incineration units combusting commercial or industrial waste," and "units combusting hospital waste, medical waste and infectious waste." 42 U.S.C. § 7429(a)(1)(B)–(D).

unspecified and undefined "other categories of solid waste incineration units." *Id.* § 7429(a)(1)(E). The delegation of bounded discretion on this issue is clear from the absence of language in the statute defining "other categories," in contrast to the statutory definitions applicable to each of the enumerated categories. *See id.* § 7429(g)(5)–(6) (defining "municipal waste" and distinguishing "industrial process wastes" and "medical wastes"). Had Congress intended EPA to regulate all potential solid waste incinerators regardless of classification, it would have used the word "all" in Section 7429(a)(1)(E), moved away from the categorial approach, or made that intent manifest in some other way. *See Va. Uranium v. Warren*, 587 U.S. 761, 765 (2019) ("[A]s in any field of statutory interpretation, it is our duty to respect not only what Congress wrote but, as importantly, what it didn't write."); *Cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not . . . hide elephants in mouseholes").

In fact, this Court has noted that the structure of Section 7429 grants EPA discretion to define other categories under Section 7429(a)(1)(E):

> In section [7429] Congress notably did not give the EPA much discretion to create categories of solid waste incineration units; rather, it listed several categories of solid waste incineration units and only allowed the EPA discretion to identify "*other* categories of solid waste incineration units."

*Davis Cnty. Solid Waste Mgmt. v. EPA*, 101 F.3d 1395, 1405 (D.C. Cir. 1996).

When Section 7429(a)(1)(E) is read in conjunction with the structure of Section 7429 and contrasted with the markedly different verbiage of subparagraphs (B) through (D), the best reading becomes more apparent. The Court should follow the view adopted in *Davis County,* 101 F.3d at 1405, that EPA has delegated authority to identify and regulate "other categories" so long as those determinations are rationally articulated. The delegation grants discretion but is narrow in scope, as it only applies to the "other categories" of incinerators that do not belong to one of the enumerated categories for which Congress directed EPA to set standards.

Congress knows to use the word "all" when it wants EPA to set emissions limitations for all categories, both defined and undefined, because it did so in other sections of the Clean Air Act Amendments. For example, Section 7412, which deals with hazardous air pollutants, requires EPA to publish a "list of *all* categories and subcategories of major sources . . . ." *Id.* § 7412(c)(1) (emphasis added). That provision was part of the same Clean Air Act Amendments that created Section 7429. *See* 101 Pub. L. 549, 104 Stat. at 2537, JA___. In contrast, "all" is noticeably absent from the text of Section 7429(a)(1)(E), which requires only that EPA set standards applicable to other categories of solid waste incinerators. 42 U.S.C. § 7429(a)(1)(E). Had Congress intended for EPA to regulate *all* categories of solid waste incinerators, it knew how to instruct EPA to do so. *See Badgerow v. Walters*,

596 U.S. 1, 11 (2022) ("'[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act,' we generally take the choice to be deliberate.") (quoting *Collins v. Yellen*, 594 U.S. 220, 247 (2021)).

The best reading of Section 7429(a)(1)(E) is that Congress left to the Agency's expertise the task of identifying remaining "other categories" of incinerators and assessing whether those categories were appropriate candidates for regulation under this provision and on what timeline. Recognizing the information gathering this would require on the Agency's part, Congress gave EPA discretion to create its own schedule for promulgating standards for other categories that the Agency determined should be regulated. *Id.*

### B. Petitioners' reliance on precedent that deals with other provisions of Section 7429 is inapposite.

No precedent supports Petitioners' statutory interpretation that EPA must regulate *all* solid waste incinerators in the course of reviewing existing standards. Petitioners cite cases that stand for the noncontroversial proposition that EPA must regulate all incinerators within the statutorily identified categories in Section 7429(a)(1)(B)–(D). Pet'rs' Br. 35 (citing *NRDC*, 489 F.3d at 1257–58 and *U.S. Sugar Corp. v. EPA*, 830 F.3d 579, 644 (D.C. Cir. 2016)). Contrary to Petitioners' arguments, the cases they cite address only incinerators that combust "commercial or industrial waste" under Section 7429(a)(1)(D). *See, e.g., NRDC v. EPA*, 489

F.3d at 1253 (reviewing rules regarding commercial and industrial solid waste incinerators); *U.S. Sugar Corp.*, 830 F.3d at 591 (similar). Those cases did not mention or interpret the different language Congress enacted to address "other categories" of incinerators in Section 7429(a)(1)(E).

Petitioners argue that *NRDC* controls this issue in their favor, Pet'rs' Br. 34–38, but that is incorrect for two reasons. First, *NRDC* involved EPA's definition of "commercial or industrial waste," and an exception to the standards based on that definition, in a rule regulating incineration of commercial and industrial wastes under Section 7429(a)(1)(D). *See NRDC*, 489 F.3d at 1253. That case does not speak to the meaning of "other categories" in Section 7429(a)(1)(E); in fact, *NRDC* does not mention Section 7429(a)(1)(E), much less interpret its function.

Second, *NRDC*'s interpretation is integrally related to Section 7429(a)(1)(D)'s language on setting standards for commercial and industrial incinerators—a statutorily enumerated category—which is distinct from Section 7429(a)(1)(E)'s language regarding other categories of incinerators. That is, Section 7429(a)(1)(D) requires EPA to set "[s]tandards . . . applicable to solid waste incineration units combusting commercial or industrial waste." And Section 7429(g)(1) defines "solid waste incineration unit" to mean "a distinct operating unit of any facility which combusts any solid waste material *from commercial or industrial* establishments . . . ." (emphasis added). Thus, this Court found that

Section 7429(a)(1)(D) requires EPA to set standards for all sources meeting the definition of commercial or industrial solid waste incinerators. *NRDC*, 489 F.3d at 1257–58 ("Applying the usual meaning here, we interpret section [7429] . . . to unambiguously include among the incineration units subject to its standards any facility that combusts any *commercial or industrial solid waste material* at all . . . .") (emphasis added) .

However, this Court has never expressed the view that EPA lacks discretion to determine what "other categories of solid waste incineration units" would be appropriate for regulation under section 7429(a)(1)(E) or that the Agency is required to regulate all solid waste incinerators. *Cf. Nat'l Ass'n of Clean Water Agencies v. EPA*, 734 F.3d 1115, 1128 (2013) (noting that *NRDC*'s holding was not dispositive of any remaining statutory construction interpretations unresolved by that decision, particularly when interpreting different phrases or terms within the subsections.) To the contrary, as noted above, the Court observed in *Davis County* that the structure of Section 7429 exhibits EPA's discretion regarding these "other categories." *Davis Cnty.,* 101 F.3d at 1405.

Petitioners' reliance on a comment in *U.S. Sugar*, Pet'rs' Br. 35, is misplaced for similar reasons. Like *NRDC*, that case involved the rule setting standards, again, under Section 7429(a)(1)(D) for *commercial and industrial waste incinerators*, not for "other categories" under Section 129(a)(1)(E). *U.S. Sugar*

*Corp.*, 830 F.3d at 643 ("That provision unambiguously requires the EPA to set emission standards for 'any facility that combusts any commercial or industrial solid waste material at all,' subject only to the listed statutory exceptions.") (quoting *NRDC*, 489 F.3d at 1257–58). The Court was merely reiterating its holding in *NRDC* that EPA must regulate all sources meeting the definition of commercial and industrial solid waste incineration units. *Id.* While it stated that EPA had a duty to set standards for "*all* solid waste combustion units," it did so *in the context* of commercial and industrial solid waste incinerators. *See id.* at 644. These holdings cannot be extended to conclude that EPA must regulate every solid waste incinerator in existence. *Cf. Nat'l Ass'n of Clean Water Agencies*, 734 F.3d 1115 (noting that *NRDC*'s holding narrowly applies to the statutory constructions at issue in that case) .

### C. The Clean Air Act does not require EPA to set standards for all solid waste incinerators during its periodic review of existing standards.

Section 7429(a)(5) requires EPA to review and, "in accordance with" Section 7429 and Section 7411, revise "standards . . . applicable to *a category* of solid waste incineration units" every five years. 42 U.S.C. § 7429(a)(5) (emphasis added). As EPA explained in the 2025 rule, this provision requires EPA to review existing standards promulgated for *a category* of solid waste incinerators; it says nothing about which *categories* EPA must regulate under Section 7429. 90 Fed.

Reg. at 27927, JA___. Use of the singular "a category" indicates that Congress intended to require a category-by-category review, which comports with its decision to establish different timelines for different categories (and no set timeline for EPA regulation of "other categories"). Therefore, EPA has no obligation to add new categories for regulation as part of a Section 7429(a)(5) review of existing standards applicable to a specific category.

Petitioner's reliance on *Louisiana Environmental Action Network* (*LEAN*) *v. EPA* is misplaced, as that decision has no bearing on Section 7429(a)(5) and interpreted different statutory language in a different provision. In *LEAN*, this Court held that EPA is required to regulate previously unaddressed hazardous air pollutants known to be emitted from a source category when conducting a technology review and revising standards for that source category "as necessary" under Section 7412(d)(6). 955 F.3d 1088, 1095–96 (D.C. Cir. 2020). That decision applies only to EPA's review and revision of Section 7412 standards; it does not discuss or make any decisions concerning EPA's periodic review under Section 7429(a)(5). Nor does Section 7429(a)(5) contain the "as necessary" language that was central to the *LEAN* decision. At most, the relevant analysis in *LEAN* turned on the scope of hazardous air pollutants subject to emission standards for particular sources, not on which sources had to be regulated in the first place, which is the issue here. *Id.* (citing 42 U.S.C. § 7412(d)(1)–(3), (6)); *see also* 90 Fed Reg. at

27927, JA___. In this case, Petitioners do not assert, nor could they, that EPA, in its standards, has failed to regulate any of the enumerated pollutants under Section 7429(a)(4). Therefore, *LEAN* has no relevance here.

## II. The 2025 rule was well reasoned and should be upheld.

### A. The Court should uphold the 2025 rule's treatment of very small municipal waste incinerators.

#### 1. EPA reasonably set standards for very small municipal waste incinerators under Section 7429(a)(1)(E), which should be upheld.

EPA reasonably regulated very small municipal waste incinerators under Section 7429(a)(1)(E). Given the differences in characteristics between very small municipal waste incinerators and other small municipal waste incinerators, EPA chose to regulate them separately subject to different MACT floors and thus different MACT standards. 69 Fed. Reg. at 71478, JA___. In the 2005 rule, EPA adequately explained the basis for its decision in light of the unique characteristics of very small municipal waste combustors; EPA's decision was rational, and Petitioners fail to meet the high bar for showing arbitrary and capricious action.

Indeed, Petitioners have long been on notice of EPA's intent to regulate very small municipal waste incinerators as their own category under Section 7429(a)(1)(E). In 1993, EPA announced that it was "proposing to include very small [municipal waste incinerators] under [other categories]" instead of as small municipal waste incinerators under Section 7429(a)(1)(C). 58 Fed. Reg. at 58499,

JA___. At the time, EPA explained that the technologies and ownership characteristics of very small municipal waste incinerators, that is, incinerators with capacities to combust less than 35 tons per day of municipal waste, are distinct from those of other small municipal waste incinerators, i.e., incinerators with capacities between 35 tons per day and 250 tons per day. 58 Fed. Reg. at 58499, JA___.

EPA again provided notice of its plan to regulate very small municipal waste incinerators when it issued the standards for small municipal waste incinerators addressing those with capacities between 35 tons per day and 250 tons per day. 65 Fed. Reg. 76350, 76370 (Dec. 6, 2000) (new source performance standards), JA___, and 65 Fed. Reg. 76359 (Dec. 6, 2000) (emission guidelines for existing sources), JA___, (collectively, 2000 rule.) Petitioners challenged the small municipal waste incinerator standards in *Northeast Maryland*. *See* 358 F.3d at 939 (noting Sierra Club as one of the petitioners). Recognizing that EPA planned to later regulate very small municipal waste incinerators under "other categories," the Court did not address any issues involving the subcategory of very small municipal waste incinerators. *Ne. Maryland*, 358 F.3d at 941 n.5. Given the history of this issue, it could not have come as a surprise to Petitioners when EPA eventually regulated very small municipal waste incinerators under the "other categories" of Section 7429(a)(1)(E) in 2005, as it planned to do for decades.

EPA provided a reasonable basis for its decision to categorize very small municipal waste incinerators separately from the other small municipal waste incinerators and made its intentions to do so publicly known for years. Thus, the Agency acted reasonably when it created the very small municipal waste category and regulated it as "other categories" under Section 7429(a)(1)(E), and its decision should be upheld.

### 2. EPA's decision to regulate under Section 7429(a)(1)(E) has no legal or practical effect because Section 7429 authorizes EPA to set emission standard floors based on subcategories of sources.

Section 7429(a)(2) explicitly provides that EPA may subcategorize units within a source category based on classes, types, or sizes; and set MACT floors and standards based on those subcategories, despite Petitioners assertion to the contrary. *See* Pet'rs' Br. 46–47. EPA had explained its intent to "include very small [municipal waste incinerators] under [other categories]" instead of within the small municipal waste incinerators category under Section 7429(a)(1)(C) because these very small incinerators are distinct in technology and ownership characteristics such that they should not be covered by the same rule. 58 Fed. Reg. at 58499, JA___. Given the unique characteristics of very small municipal waste incinerators, there is no meaningful distinction between EPA placing these units into their own subcategory with their own MACT floors and standards under Section 7429(a)(1)(C) or as one of the "other categories" under Section

129(a)(1)(E) with their own MACT floors and standards. The standards would be the same under both scenarios.

Petitioners nonetheless assert that the standards for very small municipal waste incinerators are unlawful because they are not regulated as small municipal waste incinerators under Section 7429(a)(1)(C). Pet'rs' Br. at 46–47. They also claim that as a result, the standards for very small municipal waste incinerators could be less stringent than the emission level achieved in practice by the best performing units in each category, as required by Section 7429(a)(2). Pet'rs' Br. 46–47. Petitioner's argument rests on the assumption that if very small municipal waste incinerators were part of the small municipal waste category, the floors would be set based on the latter category, which is not correct.

Petitioners fail to recognize that Section 7429(a)(2) explicitly provides that EPA may subcategorize units within a source category based on classes, types, or sizes; and set MACT floors and standards based on those subcategories. 42 U.S.C. § 7429(a)(2). This Court has affirmed EPA's authority under Section 7429(a)(2) to subcategorize when setting MACT floors. *Ne. Md. Waste Disposal,* 358 F.3d at 942 (upholding EPA's interpretation that Section 7429(a)(2) permits subcategorization when setting MACT floors); *Davis Cnty.*, 101 F.3d. at 1408 (noting that EPA has "discretion to distinguish among units within a category and creates subcategories of small units, for which it can then calculate MACT floors

and standards separately”). Petitioners are therefore incorrect that the standards for very small municipal waste incinerators must be at least as stringent as the MACT floor for the general small municipal waste incinerator category.

Petitioners further contend, incorrectly, that two decisions foreclose EPA’s ability to subcategorize when setting MACT floors: *Davis County* and *NRDC*. Pet’rs’ Br. 47. In *Davis County*, the Court acknowledged that EPA has authority to set the MACT floors based on subcategories but held that EPA was prohibited from creating a subcategory that mixes two of the congressionally specified categories. *See Davis Cnty.*, 101 F.3d. at 1404–1405, 1408–1409. That is not what EPA did when regulating very small municipal waste incinerators. EPA has not mixed two statutorily defined categories in its very small municipal waste incinerators category, which only includes small municipal waste incinerators.

*NRDC* did not involve subcategorization at all; it addressed whether EPA could exempt incinerators that burn commercial and industrial solid waste from the congressionally created commercial and industrial solid waste category, and the Court held that EPA may not do so. 489 F.3d at 1261. As a result, the Court vacated the EPA’s definition of “commercial and industrial waste” that excluded certain incinerators from its Section 7429(a)(1)(D) standards. *NRDC*, 489 F.3d at 1262. The holding from *NRDC* does not apply to the standards for very small municipal waste incinerators, which *are* regulated under Section 7429. And

because EPA may subcategorize and set standards just for very small municipal waste incinerators under Section 7429(a)(2), there is no difference between EPA regulating these very small municipal waste incinerators under Section 7429(a)(1)(E) or Section 7429(a)(1)(C). And since there is no practical difference in effect, any issues with EPA's choices here are harmless. *See Nat'l Petrochemical & Refiners Ass'n v. EPA*, 287 F.3d 1130, 1146 (D.C. Cir. 2002) (stating that the burden is on Petitioners to demonstrate that the ultimate conclusions are unreasonable despite any missteps it might have made).

**B. EPA reasonably declined to regulate institutional incinerators that burn materials for energy recovery.**

The 2025 rule reasonably maintained the 2005 rule's exclusion of institutional incinerators that burn materials for energy recovery from "other categories" of solid waste incinerators. As explained above, *See* Section I.A, *supra*, EPA has discretion to define which other categories to regulate as "other categories" of Section 7429(a)(1)(E). EPA made no change to this exclusion from the 2005 rule in the 2025 rule.

Petitioners do not argue that EPA's reasoning for these incinerators was irrational; rather, Petitioners claim that the *NRDC* decision forecloses the exclusion of all incinerators that burn materials for energy recovery. Pet'rs' Br. 44–45. Petitioners misinterpret *NRDC*. *NRDC* rejected EPA's argument for excluding such incinerators from being considered *commercial and industrial waste*

*incinerators* under Section 7429(a)(1)(D) because the Court interpreted Section 7429 to require regulation of any facility that burns solid waste materials *from commercial and industrial establishments*, with limited exceptions that do not include units that burn materials for energy recovery. 489 F.3d at 1257–58. That decision spoke narrowly to those incinerators within the ambit of Section 7429(a)(1)(D); it has no bearing on the 2025 rule, which addresses incinerators located at *institutional facilities*, not commercial or industrial establishments. And because EPA has discretion to define which incinerator categories are "other categories," it can use its discretion to exclude institutional incinerators that provide for energy from the "other categories," unlike commercial and industrial incinerators that provide for energy, for which it has no discretion exclude. *See*, Section I.A, I.B, *supra*.

EPA responded to Petitioners' comments during the rulemaking. EPA explained that it did not interpret *NRDC* to require the Agency to set emissions standards for *all* other categories of solid waste incineration units without exception. 90 Fed. Reg. at 27927, JA___. That is, it responded that this Court narrowly held that EPA could not exclude from regulation commercial or industrial solid waste incinerators that burn materials for energy recovery since Section 7429(a)(1)(D) explicitly required regulation of commercial and industrial solid waste incinerators and Section 7429(g)(1) defines a "solid waste incineration unit"

to include any unit that combusts "any solid waste material from commercial or industrial establishments." *Id.* EPA further explained that *NRDC* did not speak to Petitioner's interpretation of *all* other categories, noting that "the *NRDC* decision does not address whether the EPA is required to establish emissions standards for *all* 'other categories' of solid waste incineration units, as opposed to commercial or industrial incinerators, which are categories Congress clearly required to be regulated." *Id.* Thus, the 2025 rule reasonably excluded institutional incinerators that burn material for energy recovery from regulation under Section 7429(a)(1)(E).

### C. Petitioners' remaining challenges are barred, but in any event those challenges fail.

#### 1. Petitioners have failed to exhaust administrative remedies.

As an initial matter, Petitioners' remaining arguments that EPA failed to provide a rationale for certain exclusions in the 2005 rule are barred. Petitioners claim that EPA failed to explain its decisions to maintain certain exclusions in the 2005 rule.[5] Pet'rs' Br. 42. Specifically, they challenge EPA's choices not to

---

[5] Before addressing the merits, the Agency notes that in the Factual Background of Petitioners' Brief, Petitioners cite to several statements in attached declarations for factual support unrelated to standing. *See, e.g.* Pet'rs' Br. 9 (citing a declaration statement regarding the science of incinerators). These statements and declarations were not before the Agency when it finalized the challenged rule, are not within the administrative record, and should not be considered by the Court in reviewing the action before it. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S.

include “pathological waste incinerators, units that burn contraband and prohibited goods, units that burn national security materials, animal waste incinerators, and contaminated soil treatment facilities . . . [and] crematories.” *Id.* Petitioners further challenge EPA’s decision to include an emergency temporary-use exemption for incinerators in the “other categories” standards. *Id.* at 43–44. Petitioners also claim that EPA reversed its prior position to regulate certain categories without offering any explanation. *Id.* at 43. And Petitioners contend that EPA improperly excluded “rudimentary combustion devices” from the 2025 rule. *Id.* at 42–43.

Petitioners failed to exhaust their administrative remedies for these claims. During the 2025 rulemaking, Petitioners failed to raise any of these comments, despite challenging the 2025 rule here. Claims brought under the Clean Air Act have an exhaustion requirement. 42 U.S.C. § 7607(d)(7)(B); *Heating Air v. EPA*, 71 F.4th at 65. That is, “a litigant may raise in court only an objection to a rule or procedure which was raised with reasonable specificity during the period for public comment.” 42 U.S.C. 7607(d)(7)(B).

Petitioners knew from EPA’s proposed rules in 2020 and 2024 that EPA did not propose to change any exclusions from the 2005 rule and that EPA proposed to exclude rudimentary devices. In the supplemental notice, EPA asked for “specific comment” on its proposed definition of “rudimentary combustion devices” and

---

402, 420 (1971) (stating that judicial review is based on the record before an agency before a decision was made).

also clearly indicated that the Agency was proposing to postpone developing standards for such devices. *See* 89 Fed. Reg. 60342 (July 25, 2024) (supplemental notice to the proposed rule), JA___. Despite this knowledge, during the public comment period for the 2025 rule, EPA received no comment claiming that EPA failed to explain its rationale for excluding any specific category. Nor did EPA receive any comment that the Agency reversed its prior position to regulate certain categories without offering any explanation. EPA also did not receive any comment that the temporary-use exemption violates *Sierra Club II*, 551 F.3d 1019. And EPA did not receive any comment that it must regulate rudimentary devices. *Contra* Pet'rs' Br. 44. Petitioners therefore may not raise any of these claims now in its challenge to the 2025 rule.[6] 42 U.S.C. § 7607(d)(7)(B); *Heating Air*, 71 F.4th at 65.

The only comment EPA received involving the exclusions in the 2005 rule were Petitioners' purely legal argument asserting that EPA must regulate all other categories of solid waste incinerators. These adverse comments critical of the Agency's scope of regulation under Section 7429(a)(1)(E) were general in nature and did not dispute EPA's rationales in the 2005 rule for identifying which

---

[6] While Petitioners did claim in their public comment that EPA must regulate institutional waste incinerators that recover energy, Petitioners' claim relied on *NRDC*, which does not apply to Section 7429(a)(1)(E) as explained above. *See supra* Section II.B.

categories to regulate under Section 7429(a)(1)(E). Instead, the comments were based on Petitioners' incorrect reading of Section 7429(a)(1)(E) that EPA is required to regulate *all* other categories of incinerators. *See* JA___–___, (Comment submitted by Earthjustice and Sierra Club). EPA directly responded to these comments. *See* Section I.B, II.B, *supra*; see also 90 Fed. Reg. at 27926–27, JA___–___.

Thus, the Court should not hear any challenges that EPA failed to explain the basis for its exclusions. *See Heating Air v. EPA*, 71 F.4th 65–66.

### 2. EPA rationally explained its decisions in defining other categories.

Even if Petitioners' claims are not barred, in the 2025 rule, EPA never committed to regulating any specific categories under Section 7429(a)(1)(E) and reasonably explained its basis for any changes it did make. Indeed, EPA did not reopen its consideration of which "other categories" to regulate nor did it reopen many of the exclusions in the 2005 Rule, choosing to leave parts of that earlier rule unchanged. All choices regarding which specific categories to regulate as "other categories" were made in the 2005 rule (after thorough examination and explanation). EPA never reopened the issue. To the extent the Court finds that it did reopen certain issues, EPA adequately explained its choices in the 2005 rule.

After initially identifying six categories for further investigation and potential regulatory development, in the 2005 rulemaking, EPA ultimately

promulgated regulations for two categories of solid waste incinerators as other categories under Section 7429(a)(1)(E): very small municipal waste incinerators and institutional waste incinerators. 70 Fed. Reg. at 74871, JA___. In that rule, EPA thoroughly explained its rationale for regulating these two categories under Section 7429(a)(1)(E) and why it declined to regulate the others under this subparagraph. 69 Fed. Reg. at 71477–83, JA___–___; 70 Fed. Reg. at 74874–82, JA___–___. EPA reasonably made these determinations after considering the information the Agency gathered during its investigations and after reviewing public comments. 69 Fed. Reg. at 71477 ("EPA has gathered additional information and updated the inventory of possible [categories] . . . ."), JA___; 70 Fed. Reg. at74874–82 (response to comments), JA___–___. After reviewing the additional information, in the 2004 proposed rule (which ultimately culminated in the 2005 rule), EPA went through the list of potential "other categories" and explained the categories for which the Agency was proposing regulations and the rationale as well as the Agency's reasoning for determining  not to regulate certain other categories under Section 7429(a)(1)(E). 69 Fed. Reg. at 71477–83, JA___–___; 70 Fed. Reg. at 74874–82, JA___–___. EPA further explored eight potential categories in addition to the list it initially published. 69 Fed. Reg. at 71477–83, JA___–___; 70 Fed. Reg. at 74874–82, JA___–___.

During the 2005 rulemaking, EPA also reviewed the information it had gathered regarding a number of other potential categories of incinerators and reasonably explained why each of them should not be regulated under Section 7429. *See, e.g.,* 70 Fed. Reg. at 74874–82 (responding to comments regarding applicability issues of the rule), JA___–___; 69 Fed. Reg. at 71478 (determining that residential incinerators should not be regulated because it would render them prohibitively expensive and could lead to greater problems such as open burning), JA___.

As addressed above, Petitioners failed to administratively exhaust these claims, and EPA has not reopened these specific issues, but in any case, Petitioners are incorrect that EPA failed to explain its decisions because they ignore the explanation in the record for the 2005 rule. At that time, EPA explained its rationale for pathological waste incinerators and animal waste incinerators, 69 Fed. Reg. at 71479 (noting that animal and pathological waste is primarily composed of water and do not create many emissions when incinerated and noting biosecurity, health, and safety concerns), JA___, units burning contraband or prohibited goods, 69 Fed. Reg. at 71483 (noting biosecurity concerns with disposing of illegal drugs or foreign produce seized by customs), JA___, units that burn national security materials, 70 Fed. Reg. at 74880 (noting that the exception was extremely limited and that it was based on limited options for proper destruction of national security

materials), JA___, or contaminated soil treatment facilities, 69 Fed. Reg. at 71480 (finding that most contaminated soil treatment facilities did not combust materials and were not incinerators, and any facilities that did combust materials combusted petroleum or hazardous waste and were sufficiently covered by the Resource Conservation and Recovery Act), JA___.

And despite Petitioners' argument to the contrary, Pet'rs' Br. 43, EPA never committed to regulating any specific categories under Section 7429(a)(1)(E). In the 1993 notice where EPA initially listed some categories to investigate as potential "other categories" and set forth a regulatory schedule, EPA made clear that not all categories listed would necessarily result in regulation under Section 7429(a)(1)(E). 58 Fed. Reg. at 58501, JA___. The notice merely set out which categories EPA intended to "further investigate," and was compiled based on "a literature review of solid waste incineration technologies" and conversations with certain State agencies, the U.S. Department of Energy, and incineration equipment manufacturers. *Id.* at 58498–99. The notice explicitly stated, "[d]ue to the limited information available to date, the EPA cannot say at this time that regulations will be promulgated for all categories that are listed. However, each category listed will be further investigated and regulations will be developed and promulgated as appropriate." *Id.* at 58501. Similarly, when EPA revised its rulemaking schedule in a subsequent notice, EPA clarified again that depending on "additional information

[that] is collected and assessed, we may add or delete incinerators within the [other] category." 65 Fed. Reg. at 67358, JA___. In neither instance did EPA definitively determine which incinerators it would regulate as other categories of incinerators. Petitioners are therefore incorrect that EPA changed its mind by not including some of the listed categories in the 2005 rule.

Thus, even if not barred, none of Petitioners' remaining claims has any merit.

**3. EPA reasonably declined to remove the temporary-use exclusion.**

The 2025 rule reasonably maintained the temporary-use exclusion. As an initial matter, Petitioners also failed to raise in comments that EPA's inclusion of the temporary-use exclusion violates *Sierra Club II*, as they now assert in their brief. Pet'rs' Br. 44. Regardless, EPA acted reasonably.

In the 2005 rule, EPA exempted very small municipal waste combustors and institutional waste incinerators from emissions standards when they are used "on a temporary basis to combust debris from a disaster or emergency such as a tornado, hurricane, flood, ice storm, high winds, or act of bioterrorism." 40 C.F.R. §§ 60.2969 and 60.3061. EPA decided to include the temporary and emergency exemption "because regulation would hinder the recovery effort and this impact would outweigh the benefits from regulation of the units." 70 Fed. Reg. at 74879, JA___. EPA also noted that, "as evidenced by the recent recovery efforts due to

Hurricanes Katrina, Rita, and Wilma, the water supply, handling and treatment capabilities required to operate" emissions control technologies, like, "the wet scrubber[,] may be unavailable for long periods of time in the disaster areas, while the need for recovery is immediate. In such situations, the incinerator cannot stand idly by while awaiting ancillary services to operate the scrubber." *Id.* at 74880.

EPA's exclusion is reasonable because such incinerators that are burning disaster debris are 1) not combusting institutional waste or municipal waste and 2) are not even "solid waste incineration units" under Section 7429's definitions. First, EPA categorizes incinerators based on what they burn and where they are located. *See* 40 C.F.R. § 60.2977 (defining very small municipal waste incinerators and institutional waste incinerators based on what materials they burn). When an incinerator is burning disaster debris it is no longer burning municipal waste or institutional waste. *Id.* (defining both municipal waste and institutional waste).

Second, when an incinerator is burning disaster debris, it is no longer a "solid waste incineration unit" within the meaning of Section 7429(g)(1). That is, disaster debris is not "solid waste" as defined by EPA. Under Section 7429, EPA regulates "solid waste incineration units," which are defined as "distinct operating unit[s] of any facility which combusts any *solid waste* material from commercial or industrial establishments or the general public." 42 U.S.C. § 7429(g)(1) (emphasis added). Under Section 7429, solid waste is defined by the Solid Waste Disposal

Act. 42 U.S.C. § 7429(g)(6); *see also Solvay USA Inc. v. EPA*, 608 F. App'x 10, 11 (D.C. Cir. 2016). That statute defines "solid waste" to mean "garbage, refuse, sludge and other *discarded* solid material[s] . . . *resulting from industrial, commercial, . . . operations, and from community activities* . . . ." 42 U.S.C. § 6903(27) (emphasis added).

Thus, by their plain terms, "solid waste" and disaster debris are different. Disaster debris does not "result[] from industrial, commercial, . . . operations, [or] from community activities." Rather, disaster debris is created as the result of events such as a natural disaster or emergencies. Examples include debris created by a "tornado, hurricane, flood, . . . or act of bioterrorism." 40 C.F.R. § 60.2969.

Nor is disaster debris garbage. The dictionary defines garbage as "wasted or spoiled food and other refuse, as from a kitchen or household." *garbage, New Oxford American Dictionary* (2d ed., 2005). Disaster debris is also not refuse, which is "matter thrown away or rejected as worthless; trash." *refuse, id.* Both "garbage" and "refuse" convey a sense of a consumed material, whereas disaster debris is created by accident.

Therefore, disaster debris cannot be solid waste because it is not garbage, refuse, or anything resulting from industrial or commercial operations or community activity. Given that disaster debris is not solid waste, an incinerator is

not functioning as a "solid waste incineration unit," as defined by Section 7429, when it is burning debris.

Petitioners claim that the temporary-use exclusion in the 2025 rule is unlawful in light of *Sierra Club II*, which held that emission standards must apply continuously.[7] Pet'rs' Br. 44. (citing *Sierra Club II*, 551 F.3d at 1027–28). *Sierra Club II*, however, does not require any change to the temporary-use exclusion in the 2025 rule. That case does not address whether the standards should continue to apply when, in the case of the temporary-use exclusion, units are not solid waste incinerators because they are not burning municipal or institutional waste.

Thus, EPA reasonably chose not to apply the standards for small municipal waste combustors and institutional waste incinerators when these incinerators burn disaster debris, as in that situation, they are not burning commercial, industrial, or municipal solid waste and are not even "solid waste incineration unit[s]" under Section 7429.

---

[7] In accordance with *Sierra Club II*, EPA removed the provision exempting performance standards from applying during startup, shutdown, and malfunction events in the 2025 rule. 90 Fed. Reg. at 27917–18, JA___–___.

#### 4. EPA reasonably excluded "rudimentary combustion devices" from "other categories" of solid waste incinerators.

As explained previously, Petitioners have failed to exhaust administrative remedies on this issue. *See* Section II.A.1, *supra*. Even if they had, EPA's decision was lawful and rational.

After considering such comments on the proposal for the 2025 rule, and discussing the issue with Alaska and tribes, in a subsequent supplemental notice, EPA proposed a definition of "rudimentary combustion device" and postponing developing standards for these rudimentary devices. 90 Fed. Reg. at 27913, JA___; *see also* 89 Fed. Reg. at 60342 (supplemental notice to the proposed rule regarding "rudimentary combustion devices"), JA___. Petitioners failed to comment on the definition of "rudimentary combustion device" proposed in the supplemental notice, and no other commenter raised the issue that Petitioner now raises here, that EPA must regulate these rudimentary devices.

As EPA noted in the 2025 rule:

> Most rudimentary combustion devices are not equipped with stacks from which to sample emissions during a performance test, and a stack or extension would be needed in order to perform the testing required by the OSWI standards. Many of these devices are located within Native American villages and other remote or difficult to access areas of the country with limited road access to haul waste to a larger community for burning or landfilling. As a result, local waste disposal is the only option available, and these communities face significant challenges and constraints in addressing this issue. Given the numerous challenges regarding these units, in the 2024 SNPRM the EPA

> proposed postponing development of standards for units that meet the definition of rudimentary combustion devices at this time.

90 Fed. Reg. at 27913, JA___. This was a reasonable course of action given the lack of information available concerning these devices, and the challenges associated with accessing and testing these units.

## III. Petitioners' requested remedy is inappropriate

The 2025 rule is lawful and reasonable, and any errors the Court may find would not be prejudicial. But even if the Court finds prejudicial error, the 2025 rule should remain in place.

Pursuant to the Clean Air Act's judicial review provision, the Court may, but need not, reverse an action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 42 U.S.C. § 7607(d)(9)(A); *see Wisconsin v. EPA*, 938 F.3d 303, 336 (D.C. Cir. 2019) (remanding Clean Air Act regulation without vacatur). For Clean Air Act regulations, the Court applies its two-part framework, whereby "[t]he decision whether to vacate depends on 'the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed.'" *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993); *Ne. Md. Waste Disposal Auth.*, 358 F.3d at 142-143 (applying *Allied-Signal*'s factors to a Section 7429 case). Both factors weigh against vacatur.

If the Court were to find prejudicial error, it would not be so serious as to warrant vacatur. First, if the Court finds that very small municipal waste incinerators need to be regulated under Section 7429(a)(1)(C), EPA can easily correct this deficiency on remand by taking action to move them to that category. EPA could choose to make them a subcategory of small municipal incinerators and would presumably set the same standards. *See* Section II.B, *infra*.

Vacatur of the exemption for rudimentary combustion devices would be disruptive for communities that rely on these devices. Because it would impose additional costs, it could result in communities and institutions disposing of their waste in more environmentally disruptive methods, like open pit burning. *See* 90 Fed. Reg. at 27914, JA___. Therefore, EPA should be afforded an opportunity to address this issue on remand to minimize any such disruptions.

Finally, if the Court agrees with Petitioners that EPA must regulate all possible "other categories" of solid waste incinerators, EPA should be given an opportunity on remand to set a reasonable schedule for the promulgation of such standards. In directing EPA to "publish a schedule for the promulgation of standards" for "other categories," Congress did not mandate action by a date-certain but instead provided EPA with discretion to determine the appropriate timing for regulating these incinerators. 42 U.S.C. § 7429(a)(1)(E). This makes sense, as the record here plainly shows that some "other categories" present

particularly thorny challenges. Therefore, EPA must be afforded an opportunity in the first instance to assess the universe of incinerators that remain unregulated and publish a sensible schedule for promulgating standards.

## CONCLUSION

For the foregoing reasons, the Court should deny the petition for review and uphold EPA's 2025 rule.

Respectfully submitted,

/s/ *Cameron Hinojos*
ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*
CAMERON HINOJOS
*Attorney*
Environment and Natural Resources Division
U.S. Department of Justice

Of Counsel:

AMY HUANG BRANNING
*Attorney*
U.S. Environmental Protection Agency

June 18, 2026

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) this document contains 11593 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

/s/ *Cameron Hinojos*
Cameron Hinojos

Counsel for Respondents